# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**

vs.                                                                                **CASE NO. 17-559(CCC)**

**JOHN PEREZ MONGE,**

    **Defendant.**

_____/

## SENTENCING MEMORANDUM

John Perez Monge was 20 years of age when, after having graduated from high school, he committed an error that will follow him for the rest of his life; he engaged in the business of dealing arms without a license. He committed the offense he pled guilty to because he was in need to help his mother and girlfriend economically, and he could not provide for them with what he gained from selling gas. (PSR ¶44) Having never been arrested before, Mr. Perez Monge has no criminal history. And given his age, his history and characteristics, and his absence of any criminal history, a sentence at the lower end of the applicable guideline range, that is 24 months, would be "sufficient, but not greater than necessary," to comply with the goals of sentencing. 18 U.S.C. § 3553(a).

The circumstance that most readily sets Mr. Perez Monge's situation apart from many others is his young age and his willingness to continue studying auto and motorcycle mechanics, despite this situation. (PSR ¶42) Having graduated from High School when he was 19 years old, and attended special education during elementary school, he planned to become a motorcycle mechanic when Hurricanes Irma and María

affected Puerto Rico, placing all his plans in hold. (PSR ¶40)   And still, as he told the probation officer, once he serves his sentence, he would like to retake where he left off; and if possible take courses at the institution he is sent to, that will help him reach his goal of becoming a motorcycle mechanic.

As a child, Mr. Perez Monge's father was murdered and he was raised by his mother, who baked pastries, cleaned homes and fixed nails to sustain him and his siblings (PSR ¶30); none of whom have had problems with authorities (PSR ¶29).  As a child he had no father figure.  It was when he was about to become an adolescent that his mother met whom for some time he considered his father, Mr. Filiberto Tatis, who unfortunately separated from his mother and left, and his absence, as well as that of his siblings when they went with their father on vacations and he could not, saddened him and made him feel different (PSR ¶30).  The same feeling he had in school since he was in the special education program, he repeated one grade, and was older than his classmates. (PSR ¶41).

Mr. Perez Monge's recent graduation and young age is a matter that this Honorable Court should take into consideration at sentencing.  Considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the Guidelines." U.S.S.G. § 5H1.1.  In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the court relied on the youth of the twenty-one year old defendant as one of the reasons justifying a below-guideline sentence:

> In summary, the District Judge observed that all of Gall's criminal history "including the present offense, occurred when he was twenty-one-years old or younger" and appeared "to stem from his addictions to drugs and

> alcohol." *Id.*, at 122-123. The District Judge appended a long footnote to his discussion of Gall's immaturity. The footnote includes an excerpt from our opinion in <u>Roper v. Simmons</u>, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "'often result in impetuous and ill-considered actions.'" The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote: "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. . . . [T]he recent [National Institutes of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." App. 123, n 2.

*Id.* at 57-58.

In a 2005 report from the Office of Juvenile and Delinquency Prevention of the United States Department of Justice, the Department recognized that "the parts of the brain that govern impulse, judgment, and other characteristics may not reach complete maturity until an individual reaches age 21 or 22." *Id.* At 8.[1] Also, the United States Supreme Court concluded that life sentences for juveniles violate the Eighth Amendment prohibition against cruel and unusual punishment, largely because of the immaturity and greater possibility for change associated with those under eighteen:

> As compared to adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." *Id.*, at 569-570, 125 S. Ct. 1183, 161 L. Ed. 2d 1. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Id.*, at 573, 125 S. Ct. 1183, 161 L. Ed. 2d 1. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id.*, at 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1. A juvenile is not absolved of

---

[1] The report is available at www.ncjrs.gov/pdffiles1/ojjdp/212757.pdf.

responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." Thompson, *supra*, at 835, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (plurality opinion). No recent data provide reason to reconsider the Court's observations in Roper about the nature of juveniles. As petitioner's amici point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. See Brief for American Medical Association et al. as Amici Curiae 16-24; Brief for American Psychological Association et al. as Amici Curiae 22-27. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. Roper, 543 U.S., at 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1. It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Ibid.*

Graham v. Florida, ____ S. Ct. ___, 2010 WL1946731, *13 (May 17, 2010). Mr. Perez Monge was not a juvenile when he committed the instant offense and the issue is not whether he should be sentenced to life imprisonment. Nonetheless, as recognized by the Department of Justice, the character and thinking process of even young adults is incomplete and much of what was said in Graham v. Florida has meaning here. Indeed, Mr. Perez Monge's crime shows a failure to weigh his actions and an impetuous failure to seek a better solution, both traits commonly associated with immaturity.

Mr. Perez Monge's youthful age is included in his "history and characteristics," part of the statutorily required consideration in the sentencing determination. 18 U.S.C. § 3553(a)(1).

District courts can rely upon circumstances such as age and education in arriving at a sentence:

> The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition

> (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual 5H1.1-6, 11, and 12 (Nov. 2006).n3. These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. *See, e.g.*, 18 U.S.C. § 3553(a)(1).

Rita v. United States, 551 U.S. 338, 364-365 (2007) (Stevens, J. concurring). *See also* United States v. Jarvi, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like age, employment, and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation").

Similarly, the courts have recognized that a defendant's history is a valid justification when determining the sentence to be imposed. *See*, Kimbrough v. United States, 552 U.S. 85, 110 (2007) ("second, the [district] court considered Kimbrough's 'history and characteristics.' § 3553(a)1) . . . [noting] that Kimbrough has no prior felony convictions, that he had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps and that he had a *steady history of employment"*)(emphasis added); United States v. Sota, 2010 U.S. Dist. LEXIS 53118, *14-15 (E.D. Wis. April 30, 2010); United States v. Garza, 2008 U.S. Dist. LEXIS 100400, *8 (N.D. Ill. December 4, 2008).

This Court is well aware of the goals of sentencing set forth in 18 U.S.C. § 3553(2)-(7). Mr. Perez Monge's lack of any criminal history, his age, lack of consumption of controlled substances or alcohol (PSR ¶38,39), the circumstance that his crime was largely the product of his immaturity, and that as a young man, he has a

greater capacity for change, suggests a reduced possibility of recidivism and are relevant to the need to promote respect for the law.[2] The Sentencing Commission has determined, too, that those who, like Mr. Perez Monge, are not only first offenders under the Guidelines, but who also have no prior arrests, are the least likely to commit further offenses.[3] They have the lowest recidivism rate, 6.8%, and are described in the Commission's report as "easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend."[4]

Mr. Perez Monge's calculated guideline range is that of 24 to 30 months of imprisonment. (PSR ¶52). And taking into consideration the defendant's history and characteristics, as well as all other 3553(a) factors, a 24 month sentence would be "sufficient, but not greater than necessary." Mr. Perez Monge respectfully requests this Court to impose such a sentence; and that due to his economic circumstances, that no fine be imposed. The defendant also requests the Court to recommend that he serve his sentence in a BOP institution in Philadelphia and that he can take courses in English as a second language as well as vocational courses in vehicle repair.

---

[2] Just, however, as a sentence that is too short may fail to reflect the seriousness of the offense, promote respect for the law, or provide just punishment, so will a sentence that is excessively harsh. *See, e.g.,* United States v. Ontiveros, 07-CR-333, 2008 U.S. Dist. LEXIS 58774, *6 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]"); United States v. Zavala, No. 07-14851, 2008 U.S. App. LEXIS 24168, *8-9 (11th Cir. Nov. 25, 2008) ("[A]ny higher sentence would promote disrespect for the law.") (quoting the district court).

[3] United States Sentencing Commission, *Recidivism and the "First Offender" (May 2004)*, at 17. Available at www.ussc.gov/publicat/Recidivism_FirstOffender.pdf . The Committee notes that there are two other groups that, under the Guidelines, are technically first offenders, those who have arrests and no convictions and those who have convictions which, for one reason or another, are not counted. Both have higher recidivism rates than those who have never been arrested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the US Attorney's Office representative in this case via the CM/ECF electronic filing system.

Respectfully Submitted,

In San Juan, Puerto Rico this 31st day of July, 2018

        s:/**Antonio L. Bisbal Bultrón**

        **ANTONIO L. BISBAL BULTRON, ESQ.**

        USDC-PR 214913
        P.O. Box 9023851
        Old San Juan Station
        San Juan, PR 00902-3851

        Tel. (787) 531-4416
        E-mail: bmlegalpr@gmail.com

---

[4] *Id.* at 16-17.